# EXHIBIT A

Electronically Filed by Superior Court of California, County of Orange, 09/13/2024 12:39:29 PM.
30-2024-01425873-CL-BT-CJC - ROA #2 - DAVID H. YAMASAKI, Clerk of the Court By A. Wilcher, Deputy Clerk.
Case 8:25-cv-00047-DOC Document 1 Filed 02/14/25 Page 2 of 13 Page ID #:12

**SMITH KRIVOSHEY, PC**
Yeremey O. Krivoshey (SBN 295032)
166 Geary Str STE 1500-1507
San Francisco, CA 94108
Telephone: 415-839-7077
Facsimile: (888) 410-0415
E-Mail: yeremey@skclassactions.com

**SMITH KRIVOSHEY, PC**
Joel D. Smith (SBN 244902)
867 Boylston Street 5th Floor #1520
Boston, MA 02116
Telephone: 617-377-4704
Facsimile: (888) 410-0415
E-Mail: joel@skclassactions.com

*Attorneys for Plaintiff*

SUPERIOR COURT OF THE STATE OF CALIFORNIA

FOR THE COUNTY OF ORANGE

| | |
|---|---|
| DENNIS BOYLE, | Case No. 30-2024-01425873-CL-BT-CJC |
| Plaintiff, | **COMPLAINT** |
| v. | |
| SWEEPSTEAKES LIMITED, | |
| Defendant. | |

COMPLAINT

## **NATURE OF THE ACTION AND FACTUAL ALLEGATIONS**

Plaintiff brings this action under California's Business & Professions Code § 17200 *et seq*., seeking public injunctive relief to discontinue operation in California of the illegal gambling website, Stake.us.  Defendant is an offshore criminal enterprise that owns and operates the website.

### ***The Problem of Online Gambling***

1.      The online gambling industry is profiting from gambling addiction the same way the Sackler family once profited off of opioids.

2.      For decades, the proportion of Americans diagnosed with pathological gambling held steady at less than 1 percent, with 7 million Americans believed to be suffering from a gambling addiction at an annual "social cost" of $7 billion.  But those numbers have skyrocketed with the advent of online gambling: from 2021 to 2022, there was a 45 percent increase in the number of calls, texts, and messages to the National Problem Gambling Helpline.  According to one study, up to 30 percent of problem gamblers have attempted suicide, while a larger percentage of such individuals reported having suicidal ideations.

3.      The United States may be on the cusp of an explosive growth of gambling addiction akin to the opioid crisis, fueled by online access to gambling websites.  Gambling disorder can take as long as five to seven years to develop.  During the last five to seven years, online gambling websites proliferated with no way to reduce the ensuing harm.  The federal government spends no money on gambling addiction programs, and state gaming commissions regulate gambling unevenly, at best.

4.      The fallout is not limited to gamblers.  It has a ripple effect that negatively impacts spouses, partners, children, and employers.

5.      In California, it is illegal to operate and offer online gambling casinos, including websites that offer slot machines, blackjack, roulette, and poker.  *See generally* Cal. Penal Code §§ 330 *et seq*.  In this regard, California has a fundamental and deep-rooted public policy against gambling.

1

*Defendant Uses Free "Social Gaming" As A Pretext For Real, Online Gambling*

2      6.      Defendant owns and operates a popular, casino-oriented internet gaming website

3  called www.stake.us.  On its website, users can play slot games, scratch cards, poker, and other

4  table games such as blackjack and roulette.

5      7.      The website also offers a "live casino" where online players interact directly with

6  live dealers visible via a webcam to play games like blackjack and roulette:

7

8

9

10

11

12



13

14

15

16

17

18

19

20



21

22

23

24

25

26

27

28

8.  In short, the slots, blackjack, and other games of chance offered on the website are gambling, and they are no different than if they were played in a Las Vegas casino.

9.  The website is accessible and made available to California residents.

10.  Consumers visiting the gaming website for the first time are awarded an allocation of free "Gold Coins." Consumers also receive Gold Coins through promotional giveaways. Gold Coins can only be used to play Standard Games. Likewise, Standard Games can only be played with Gold Coins, and only Gold Coins may be won playing Standard Games. Users may purchase Gold Coins on the website.

11.  Consumers may also use "Stake Cash" to play "Promotional Play" games, where additional Stake Cash may be won. Users may redeem Stake Cash for prizes, including gift cards and crypto currency. Stake Cash is redeemable at an implied rate of 1 Stake Cash per 1 USD. In other words, "Stake Cash" is a proxy for real money.

12.  Defendant claims there's no purchase necessary to enter its Promotional Play sweepstakes and Stake Cash cannot be purchased directly. However, Defendant uses the Stake Cash system to entice players to purchase additional Gold Coins and to continue gambling on the games. Much like how a brick-and-mortar casino tempts players to stay at a blackjack table with free drinks, or how online sportsbooks provide promotional "free wagers" for sports bets in jurisdictions where sports gambling is legal, Stake Cash is an advertising and customer retention strategy.

13.  To ensure Defendant remains profitable, any Stake Cash a player receives through a welcome bonus or promotional giveaways is subject to a 300% "play-through requirement." Play-through requirements, also known as wagering requirements, are a common feature in online gambling promotions and bonuses. Such requirements specify how much a player needs to wager before he or she can withdraw the promotional funds or any associated winnings. In other words, if a player receives $100 in promotional Stake Cash, he or she must wager a total of $300 in Stake Cash before Defendant permits the player to redeem any winnings from such wagers. This practice ensures a lucky player who wins a few wagers with promotional Stake Cash cannot simply cash out

immediately but must continue to engage in gambling games, stacking the odds heavily in Defendant's favor and encouraging players to obtain additional Stake Cash through purchases once the promotional Stake Cash is inevitably lost.

14.     Consumers can receive Stake Cash in multiple ways, including by purchasing specifically marked packs of Gold Coins, by entering Stake Cash no-cost giveaway contests, by sending a request by mail, and as a "Daily Reload" given when logging into the player's account (once per day).

15.     However, by far, the most typical way for users to obtain Stake Cash is to purchase Gold Coins (i.e., the more Gold Coins a user purchases, the more Stake Cash the user receives as a bonus). So, in effect, when a person buys Gold Coins they are also buying Stake Cash, though Defendant falsely claims that the Stake Cash is just a "bonus" added to the purchase of Gold Coins.

16.     Players then gamble using Stake Cash that they would play with Gold Coins. In short, a user playing Promotional Games with Stake Cash is gambling in the purest sense – they are wagering something of value (Stake Cash) on a random event with the hope and intent of winning more Stake Cash than wagered.

17.     Notwithstanding the differences between Standard Games and Promotional Games, none of the games depend on any amount of skill to determine their outcomes.

18.     Consumers can continue playing with the coins they won, or they can exit the game and return at a later time to play because Defendant maintains win and loss records and account balances for each consumer. Once the algorithms determine the outcome of a spin and Defendant displays the outcome to the consumer, Defendant adjusts the consumer's account balance. Defendant keeps records of each wager, outcome, win, and loss for every player of the games.

### *All Purported Contracts With Defendant Are Void*

19.     There are two separate and independent reasons why any purported contract with Defendant is void.

20.     First, in California, a contract "is not lawful" if it is "contrary to an express provision of law," or "[o]therwise contrary to good morals." Cal. Civ. Code. § 1667. Gambling contracts have long been deemed to fall within the ambit of this rule.

21.     Parties cannot lawfully agree to engage in gambling any more than they can lawfully agree by contract to engage in forced labor, sex trafficking, illicit drug sales, or other crimes.

22.     Second, operating a business without a license or registration can result in serious consequences in any state. California has one of the toughest sanctions for conducting business in California without necessary registration or licensing with the Secretary of State.

23.     In addition to costly penalties and fees, California authorizes the automatic voiding of any contracts a company entered into during the period it was out-of-compliance either with the secretary of state or with the California Franchise Tax Board (FTB). Cal. Rev. & T. Code §§ 23304.1. Thus, a customer or vendor that becomes aware of the company not being in good standing in California can void a contract simply due to lack of registration or noncompliance.

24.     Defendant is not registered with the State of California.

25.     Thus, by this Complaint, Plaintiff voids any purported contract between himself and Defendant, and any contractually-based defenses Defendant may raise are likewise void.

### THE PARTIES

26.     Plaintiff Dennis Boyle is a resident of Cypress, California. Plaintiff struggles with gambling addiction, and he lost money on Defendant's illegal gambling website within the last three years. As a result, he suffered an injury in fact resulting in the loss of money and/or property.

27.     Defendant Sweepsteaks Limited is a for-profit business entity registered in Cyprus and with its registered office at 28 Oktovriou, 313 Omrania BLD, Limassol, Cyprus. Defendant also operates a U.S office at 13101 Preston RD STE 110-5027 Dallas, TX 75240. Through its website, Defendant conducts business in California.

COMPLAINT

5

**JURISDICTION AND VENUE**

28.     This Court has personal jurisdiction over the parties because Plaintiff resides in California and submits to the jurisdiction of the Court, and because Defendant, at all times relevant hereto, has systematically and continually conducted, and continues to conduct, business in this State.

29.     Stake.us is an interactive website used for commercial purposes—specifically, gambling.

30.     It was foreseeable that California residents would use the Stake.us website because Defendant knew that California residents frequently gamble on the website and that they would continue to do so.

31.     Defendant knows that California residents use the website because it asks users to disclose which state they live in when registering to use the website.

32.     Stake.us appeals to, and profits from, an audience in California, and California residents form a significant portion of the website's customer base.

33.     As further evidence that Defendant foresaw and intended Californians to use its gambling website, the privacy policy of the website includes a lengthy section specifically directed at "California residents," including information tailored to Californians about their privacy rights, as well as special procedures for California residents to follow when requesting access to or deletion of their personal information, and Defendant's procedures for responding to such requests.

34.     Defendant took steps to ensure that California residents would have access to the website so that they could gamble online.  Specifically, there is widely available technology that allows websites to detect the location of a website visitor, including the state in which they are located.  Reputable online gambling companies utilize this technology to prevent website users from using their websites if the website user is located in a state where online gambling is illegal, like California.  However, Defendant made an affirmative decision to *not* use that technology for the Stake.us website, because that would prevent Defendant from profiting from gambling in California.

COMPLAINT

6

35.     Venue is proper in this Court pursuant to Civil Code §§ 395 and 395.5. Defendant conducts business in this County and throughout the State of California

36.     Federal court subject matter jurisdiction over this action does not exist.  Plaintiff asserts no federal question or violations of federal law in this Complaint.  Plaintiff's individual claims do not exceed $75,000.

## FIRST CAUSE OF ACTION
**Unlawful Business Practices in Violation of the Unfair Competition Law
California Business and Professions Code §§ 17200 et seq.**

37.     Plaintiff incorporates by reference the allegations contained in all preceding paragraphs of this complaint.

38.     Plaintiff is a "person" within the meaning of Cal. Bus. & Prof. Code § 17201 because he is a natural person.

39.     Plaintiff has standing under the UCL because he suffered an injury in fact and lost money or property as a result of Defendant's unlawful and unfair conduct.

40.     By hosting and facilitating the unlawful online gambling website at issue here, Defendant engaged in unfair competition within the meaning of Cal. Bus. & Prof. Code § 17200 by committing unlawful and unfair business acts and practices.

41.     Slot machines have long been outlawed in California, as are other games of chance offered on Defendant's website, such as blackjack, poker, and roulette.

42.     If a gaming machine has the look and feel of a slot machine or other gambling game, accepts real money for gameplay, and rewards a win with an "additional chance or right to use the slot machine or device," the device is an illegal slot machine or gambling.

43.     Consequently, social casinos, as described herein, are illegal slot machines and gambling operations under California law.

44.     California aggressively regulates all forms of gambling. One reason it does so is to prevent consumers from being cheated by professional gambling operations.

COMPLAINT

7

45.    Because social casinos operate as if they are not subject to gambling regulations, they do not comply with the regulations that govern the operation of slot machines or other gambling.

46.    Notably, while any legitimately operated casino must randomize its results, social casinos do not randomize their results, at least with respect to the electronic forms of gambling offered on the website.  Instead, social casinos tailor "wins" and "losses" in such a way as to maximize addiction (and, in turn, revenues).

47.    In other words, social casinos cheat players out of a legitimately randomized gaming experience. Not only can players never actually win money, but their financial losses are maximized by deceptive gameplay tweaks that would never be allowed in a legitimate (*i.e.*, licensed and regulated) slot machine.

48.    Defendant's slot machine games ("Illegal Slots") are illegal slot machines as defined by Cal. Penal Code§ 330b(d) because, among other reasons, when a player purchases and wagers virtual casino chips, a winning spin affords the player an "additional chance or right to use" the game. Pursuant to Cal. Penal Code § 330b(a), Defendant, among other violative conduct, manufactures, repairs, owns, stores, possesses, sells, rents, leases, lets on shares, lends and gives away, transports, and exposes for sale or lease, the Illegal Slots. Defendant also offers to repair, sells, rents, leases, lets on shares, lends and gives away, permit the operations, placement, maintenance, and keeping of, in places, rooms, spaces, and buildings owned, leased, or occupied, managed, or controlled by Defendant, the illegal slots and other games of chance.

49.    The Illegal Slots are illegal slot machines as defined by Cal. Penal Code § 330.1 because, among other reasons, when a player purchases and wagers virtual casino chips in the Illegal Slots, a winning spin affords the player an "additional chance or right to use" the Illegal Slots. Pursuant to Cal. Penal Code § 330.1(a), Defendant, among other violative conduct, manufactures, owns, stores, keeps, possesses, sells, rents, leases, lets on shares, lends and gives away, transports, and exposes for sale and lease, the Illegal Slots. Defendant also offers to sell, rent, lease, let on shares, lends and gives away and permits the operation of and permits to be

placed maintained, used, or kept in rooms, spaces, and building owned, leased, or occupied by Defendant or under Defendant's management and control, the Illegal Slots.

50.    The Illegal Slots are also illegal lotteries as defined by Cal. Penal Code § 319. Section 319 defines a lottery as any "any scheme for the disposal or distribution of property by chance, among persons who have paid or promised to pay any valuable consideration for the chance of obtaining such property." Thus, the elements of an illegal lottery under Section 319 are a prize (or "property"), distribution by chance, and consideration.

51.    The Illegal Slots and other games of chance offered on Stake.us satisfy all three elements because players pay valuable consideration in the form of real money to purchase virtual casino chips, use those chips to try to win prizes in the form of additional free plays, and are awarded these prizes based on chance outcomes.

52.    California law recognizes that the duty of the operator of a game of chance to permit the winner to play further games for free is an obligation arising from contract, and the right of the winning player to continue to play for free is personal property.

53.    Defendant's hosting and facilitating of the Illegal Slots and other games of chance described in this complaint constitute an unfair and unscrupulous business practice because—among other reasons—Defendant and the Illegal Slots work together to target and exploit vulnerable and addicted players; to deceptively tweak gameplay in order to maximize time-on-device and revenue; and to operate their online slot machines outside the bounds of licensing, regulation, and tax policy.

54.    Defendant also has acted unlawfully by doing business in California without the requisite registration or licensing with the Secretary of State.

55.    California's Unfair Competition Law ("UCL"), Bus. and Prof. Code § 17203, specifically authorizes this Court to issue injunctive relief to enjoin ongoing acts of unfair competition and unlawful conduct.

56.    Under the UCL, unfair competition encompasses any unlawful act, including acts made unlawful under the penal code.

COMPLAINT

Exhibit A, Page 21

9

57.    The UCL authorizes this Court to enjoin Defendant's ongoing violations of law, as alleged in this complaint.

58.    No plain, adequate, and complete remedy for Defendant's conduct exists at law. Consequently, the California Class is entitled to an equitable remedy under the UCL.

59.    Plaintiff seeks public injunctive relief under the UCL. The primary purpose of this relief is to prohibit unlawful acts that threaten future injury to the general public as a whole, as opposed to a particular class of persons.

## SECOND CAUSE OF ACTION
**Violations of California's Consumer Legal Remedies Act ("CLRA")**
**Cal. Civ. Code §§ 1750, *et seq.***

60.    Plaintiff incorporates by reference the allegations contained in all preceding paragraphs of this complaint.

61.    Defendant is a "person" as defined by California Civil Code § 1761(c).

62.    Plaintiff is a "consumer" within the meaning of California Civil Code § 1761(d).

63.    Defendant violated California Civil Code § 1770(a)(14) because its conduct has the tendency or capacity to deceive or confuse customers into believing that that the gambling transactions confer or involve certain rights, remedies, or obligations (i.e., the right to recover winnings and the obligation to pay for losses), when in fact any such rights, remedies, or obligations are prohibited by law.

64.    Defendant violated California Civil Code § 1770(a)(17) by representing that the website users will receive an economic benefit (in the form of gambling winnings), when the earning of the benefit is contingent on an event to occur subsequent to the consummation of the transaction (i.e., winning the bet).

65.    Defendant violated California Civil Code § 1770(a)(17) by inserting unconscionable provisions in the contract. Namely, the entire agreement is unconscionable because it is unlawful. The agreement also contains provisions intended to obstruct the Plaintiff's ability to seek public injunctive relief barring further violations of the law.

66.     Defendant's unfair and deceptive acts or practices occurred in a transaction intended to result or that resulted in the sale of goods or services to a consumer.

67.     Defendant acted with knowledge and intent.

68.     As a result of Defendant's misconduct, Plaintiff has suffered monetary harm.

69.     Plaintiff seeks public injunctive relief under the CLRA.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, individually and on behalf of the general public, pray:

A.     For public injunctive relief shutting down the operation of Defendant's unlawful gambling website.

B.     An award of fees and costs, to the extent permissible under the CLRA or any other statute.

C.     For such other and further relief as the Court may deem proper.

Dated: September 13, 2024          **SMITH KRIVOSHEY, PC**

By: _____
                    Joel Smith

**SMITH KRIVOSHEY, PC**
Yeremey O. Krivoshey (SBN 295032)
166 Geary Str STE 1500-1507
San Francisco, CA 94108
Telephone: 415-839-7077
Facsimile: (888) 410-0415
E-Mail: yeremey@skclassactions.com

**SMITH KRIVOSHEY, PC**
Joel D. Smith (SBN 244902)
867 Boylston Street 5th Floor #1520
Boston, MA 02116
Telephone: 617-377-4704
Facsimile: (888) 410-0415
E-Mail: joel@skclassactions.com

*Attorneys for Plaintiff*